361 F.Supp. 247 (1973)
Marie LANDESS, Plaintiff,
v.
Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant.
No. S 72 C 45.
United States District Court, E. D. Missouri, Southeastern Division.
May 17, 1973.
James R. Reynolds, Kennett, Mo., for plaintiff.
Daniel Bartlett, Jr., U. S. Atty., J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., Paul P. Cacioppo, Regional Atty., Region VII Dept. of Health, Education & Welfare and Caroline McB. French, Deputy Regional Atty., Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
This is a proceeding to review the final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for disabled widow's insurance benefits. See 42 U.S.C. §§ 402(e)(1)(B)(ii) and 405(g). Defendant has moved for summary judgment and filed a memorandum in support of the motion. Plaintiff has filed a memorandum seeking reversal of the decision of the Secretary.
Plaintiff filed her application on July 24, 1970. The application was disallowed by letter dated October 14, 1970. On October 20, 1970, plaintiff filed another application, which was treated as a request for reconsideration. On April 20, 1971, plaintiff was informed that after reconsideration, the previous decision denying benefits was affirmed. On October 20, 1971, a hearing was held. On December 27, 1971, the hearing examiner issued his decision that plaintiff was not entitled to disabled widow's insurance benefits. Plaintiff appealed the decision of the hearing examiner to the Appeals Council. The Appeals Council received in evidence two doctors' reports which were not before the hearing examiner. On June 6, 1972, the Appeals Council affirmed the decision of the hearing examiner. This suit followed.
Title 42, § 405(g) provides in pertinent part:
"As part of his answer the Secretary shall file a certified copy of the transcript *248 of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."
In Brasher v. Celebrezze, 340 F.2d 413, 414 (8th Cir. 1965), the Eighth Circuit summarized the basic principles applicable in reviewing the Secretary's decision:
(1) The plaintiff has the burden of establishing his claim;
(2) The Act is remedial and is to be construed liberally;
(3) The Secretary's findings and the reasonable inferences drawn therefrom are conclusive if supported by substantial evidence, which is such relevant evidence, based on the record as a whole, as a reasonable mind might accept as adequate to support the conclusion;
(4) Where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve the conflict.
That plaintiff has satisfied all but one of the requirements for benefits under 42 U.S.C. § 402(e) is not disputed. The one disputed requirement is the fact of "disability". The term "disability" is defined in the Act as:
"(1) . . .
(A) Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
* * *
(2) For purposes of paragraph (1) (A)
(B) A widow . . . shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.
(3) For purposes of this subsection, a `physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d).
The regulations prescribed by the Secretary are found in 20 C.F.R. and provide in pertinent part:
"§ 404.1504
A widow or widower shall, for purposes of section [402(e)], be determined to be under a disability only if, in the absence of evidence that he or she is engaged in substantial gainful activity
(A) his or her impairment or impairments . . . are listed in the appendix to this subpart; or
(B) his or her impairment or impairments are not listed in the appendix to this subpart, but singly or in combination . . . are determined by the Secretary to be medically the equivalent of a listed impairment.
* * *
§ 404.1505
(A) An individual's impairment or impairments shall be determined to be medically the equivalent of an impairment listed in the appendix to this Subpart P, only if the medical findings with respect thereto are at least equivalent in severity and duration to the listed findings of a listed impairment.
(B) Any decision made under . . . § 404.1504 . . . as to *249 whether an individual's impairment or impairments are medically the equivalent of an impairment listed in the appendix to this Subpart P, shall be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques, including a medical judgment furnished by one or more physicians designated by the Secretary, relative to the question of medical equivalence. A `physician designated by the Secretary' shall include a physician in the employ of or engaged for this purpose by the Administration . . . or a State agency authorized to make determinations of disability."
Plaintiff contends (1) that the opinion of her family physician that she is disabled should be "accorded priority" over the opinions of the physician who examined her at the request of the Social Security Administration and the two physicians who made the disability determination reports, and (2) that her combined ailments are the medical equivalent of listed impairments, thereby entitling her to benefits.
The hearing examiner accurately summarized plaintiff's allegations and testimony and the medical evidence before him as follows:
"SUMMARY OF CLAIMANT'S ALLEGATIONS AND TESTIMONY
Claimant's interview with a Social Security Administration representative on October 1, 1970 was reported as follows: `Got crippled, when she would bend over couldn't get back up. Had pain down side of each leg. Legs hurt all the time. First noticed hurting in legs in July 1970. She had had spells as far back as 1965 with pain in sciatic nerve. Found out in 8/70 when back was x-rayed that the disc was ruptured and was pinching a nerve which causes the pain. She also has a tumor on her uterus since 1967 which causes hemorrhaging each month. The doctor has advised her to have an operation for removal of uterus but she has not been financially able to afford an operation.'
Claimant also related that she did her cooking, washed the dishes and occasionally vacuumed the rugs. She sewed some but could only sew for an hour before her feet go to sleep. (Exhibit 12)
At the hearing claimant testified she was born October 20, 1920; she was married to Robert B. Landess on March 9, 1945 and he died December 26, 1969. The couple had three children, born in 1946, 1947, and 1950. Claimant testified that she enjoyed good health as a young woman but began having a problem with heartburn and gas pains when she would bend over in about 1957. She has been treated by the Brookreson doctors in Poplar Bluff, Missouri, in recent years but has not been hospitalized. The only surgery in recent years was a foot operation in 1968 when a bone was removed from her little toe.
Claimant's heartburn problem is a hiatus hernia. She notices cramps in her stomach, some pressure in her chest when she eats, and it feels like a heart attack. She also has a sciatic nerve pain in her hip which was severe in July of 1970. At that time she got `down in her back' and was almost paralyzed. The doctor took x-rays and told her that she had a disintegrated disc and a huge calcium deposit which was pinching the nerve. The condition was treated with medication and shots and it comes and goes. No myelogram was performed. Recently claimant has had a problem with her feet, and the doctor says that she has arthritis in her toes. The pain is so intense she can only wear tennis shoes.
She takes a tablet for the pain in her hip and anacin for the arthritis condition in her feet. She also takes `heartburn medicine'. She has not seen a doctor since `way back in the spring' although she has a tumor on her uterus which causes her to hemorrhage. *250 The doctor has recommended surgery for this condition but also stated that it may shrink without treatment after menopause. As yet claimant has declined surgery for the tumor.
Claimant lives alone and does `what housework gets done', but the doctors told her to stay off her feet and not to do any hard work.
SUMMARY OF THE MEDICAL EVIDENCE
A telephone interview with Dr. A. D. Brookreson of Poplar Bluff, Missouri, on September 18, 1970 was reported as follows:
`Date of the last examinations were 8-8-70 and again 9-8-70. Scheduled at times when they were necessary. Chief complaint is back pain. Examination of the back showed the range of motion to be less than 50% of limitation of normal. Deep tendon reflexes were still intact bilaterally and equal as yet. No nerve deficit. Examination at the lab showed ECG had ischemic changes. (Non-specific). Gallbladder visualization was normal. X-ray of the lumbar spine showed a slight decrease in the intervertebral space at the L-1 level. Also x-ray studies disclosed a hiatus hernia. Diagnosis: hiatus hernia; intervertebral disc suspect; varicose veins, uncomplicated (no ulcers, no edema, no brawny edema, no dermatitis). . . . Treatment has been a bland diet and anticholinergic medication which has helped to control the symptoms of the hiatus hernia, namely indigestion and occasionally vague chest discomfort. Individual in July 1970 refused surgery for this hiatus hernia which is complicated by esophagitis and gastritis. Prognosis: Individual is actually getting better, with the hernial symptoms, improving under the treatment outlined above. An associate, Dr. A. F. Brookreson had to give a shot of steroids in August 1970 for the pain in the back, but no arthritis had been found on x-ray studies. Treatment for the varicose veins is merely elastic support and this keeps the symptomatology under control.' (Exhibit 16)
Dr. A. F. Brookreson, in a report dated October 20, 1970 lists the following under `history': `Has frequent headaches post nasal drip. Sinus pain. Frequent attacks of severe bronchitis. Has a fibromyoma uterus and frequent hemorrhages. Also has severe pain in her back which is referred down to the left leg.' The diagnoses listed are: `sciatic neuritis; lumbar disc disease; fibromyoma uterus with menorrhagia and metrorrhagia; sinusitis; chronic bronchitis.' (Exhibit 17) Claimant was examined by Dr. Frank Tull, specialist in orthropedic surgery, on December 14, 1970 at the request of the Social Security Administration. Examination of the cervical spine revealed a full motion without pain. Claimant was 66¼ inches tall and weighed 154¼ pounds, blood pressure was 130/82. There was full motion in both shoulders, elbows, wrists and digits of both hands. There was no obvious muscle weakness, atrophy or loss of tone in either of the upper extremities. There was a slight increase in normal dorsal kyphosis. Examination of the lumbar spine revealed a slight increase in the normal lumbar lordosis. There was mild to moderate lumbar paravertebral muscle spasm. Right and left lateral functions were possible to approximately 10 or 15 degrees. Rotary motions were possible at approximately 15 degrees. Extension was possible 5 degrees and flexion possible to 60 degrees. There was tenderness to palpation over the lumbosacral spine. There was bilateral sciatic notch tenderness. Straight leg raising was negative bilaterally at 90 degrees. There was no obvious muscle weakness, atrophy or loss of tone in either of the lower extremities. The peripheral pulses were palpable and equal bilaterally. There was a full motion of both hips. X-rays of the lumbar spine were thought to be within normal limits.

*251 Dr. Tull summarized: `This is a . . . female with chronic low back pain with radicular symptoms to both legs but with a negative straight leg raising test bilaterally . . . I believe at this time a lumbar myelography would be indicated . . . If this lady does not demonstrate a ruptured intervertebral disc, then I would institute vigorous physical therapy and have her wear a lumbosacral support. She does have some objective findings to substantiate her subjective complaints.' (Exhibit 18)
The file also contains a handwritten (and not completely legible) report from Dr. A. D. Brookreson dated December 15, 1971. The listed diagnoses appear to be (1) Lumbar disc disease, (2) Hiatus Hernia and (3) Reflex Esophagitis. It is indicated that the impairments have prevented work since 1969. He also indicates he last examined claimant on October 20, 1971 which was the date on which claimant's Social Security hearing was held. (Exhibit)
The file also contains a disability determination and transmittal executed by Dr. F. S. Morest September 23, 1970. In this determination Dr. Morest considers diagnoses of hiatus hernia, intervertebral disc suspect and varicose veins. He concludes, `The physician whose signature appears on this determination, having considered all the medical evidence, concludes that the claimant's impairments do not meet or equal the level of severity described in the listing of impairments appendix to Subpart P of Regulations No. 4.' (Exhibit 3)
In a disability determination and transmittal dated December 21, 1970, Dr. John J. Holcomb considered additional diagnoses set forth in Exhibits 17 and 18. He noted that the claimant had a possibility of a ruptured disc but likewise concluded: `The physician, whose signature appears on this determination, having considered all the medical evidence concludes that the claimant's impairments do not meet or equal the level of severity prescribed in the Listing of Impairments, Appendix to Subpart P of Regulations No. 4.' (Exhibit 8)"
The Appeals Council, as previously noted, admitted into evidence two exhibits that were not before the hearing examiner. The exhibit marked AC-1 is a letter dated February 4, 1972 from A. F. Brookreson, M.D., one of plaintiff's doctors, to her attorney which states:
"Mrs. Landess was examined at the Poplar Bluff Hospital on 7-23-70, at which time, Upper Gastrointestinal X-rays revealed a large hiatus hernia, which makes for easy regurgitation of food on stooping or bending, increasing intra-abdominal pressure. X-ray of the lumbar spine revealed a narrow degenerated lumbar disc. The patient also had severe pain in her left foot and leg, which are physical evidences of pressure on the lumbar nerves.
"We do not have a neurosurgeon in Poplar Bluff. Therefore we do not do myelograms here.
"It is my opinion from the physical examination that Mrs. Marie Landess is not able to do manual labor due to the above conditions, but a report from a neurosurgeon, with a myelogram to prove the ruptured disc might give more evidence to the seriousness of her condition."
The exhibit labeled AC-2 is a letter dated March 30, 1972 from A. D. Brookreson, M.D., another of plaintiff's doctors, to her attorney, which states:
"This 51 year old white female returns to the Henrickson Clinic with the chief complaints of recurrent back pain, numbness of the left lower extremity, and tingling along the lateral aspect of the left thigh. The patient also has complaints of intermittent nausea with severe abdominal pain.
"On examination, there is epigastric tenderness to palpation, without organomegaly or masses. There is paravertebral lumbar muscle spasm of the lower thoracic and lumbar areas, with reduced ranges of motion at the waist. *252 Straight-leg raising tests are positive, particularly on the left, with inability to extend the left lower extremity without severe back pain. There also appears to be decreased sensation and some decreased deep tendon reflexes of the left patella and left ankle jerk.
"In review of previous x-rays, the Upper GI Series did reveal a hiatal hernia, with thickened mucosa, indicating esophagitis. The esophageal hiatus was approximately twice normal width, making easy regurgitation and development of the patient's hiatal hernia. There was an imprint of relatively thick holes in the upper stomach, suggesting an acute gastritis. There was duodenal cap thickening indicating duodenitis, and pylorospasm. Chest x-ray showed slight blunting of the ventricular outlines suggesting early hypertensive cardiovascular disease. In review of the patient's previous lumbar spine film, there was a horizontal sacrum, indicating inherent sacral instability. L-1 disc space was narrowed. The radiologist, A. T. Tuma, M.D., felt that there was early degeneration of L-1 disc. On the AP View, the S-4 nerve root outlet appeared to be surrounded by a rounded calcific density of small size, which the examiner felt could represent a healed primary complex in the lymphatics of the pelvis.
"On genitourinary examination, the pelvis did reveal a moderate cystocele with the prescence of uterine fibromyomata. It has been suggested to the patient that if there is any enlargement or continued discomfort in this area, most likely surgical intervention will be necessary.
"It is my impression that this patient is disabled at this time, and if you have any further questions regarding her, please feel free to contact me."
There are some differences in the findings of Dr. Tull and the findings in Exhibit AC-2. First, Dr. Tull reported that straight-leg raising tests were negative, whereas it is stated in Exhibit AC-2 that straight-leg raising tests are positive, particularly on the left. Second, Exhibit AC-2 states that there appears to be decreased sensation and some decreased deep tendon reflexes of the left patella and left ankle jerk, whereas Dr. Tull did not so find. These differences may be due to the fact that Dr. Tull examined plaintiff on December 14, 1970 and Dr. A. D. Brookreson apparently examined plaintiff around March 30, 1972, the date shown at the top of Exhibit AC-2. The reports of Dr. Tull and Dr. A. D. Brookreson in Exhibit AC-2 were before the Appeals Council.
Exhibit AC-2 also contains a statement that a chest x-ray showed slight blunting of the ventricular outlines suggesting early hypertensive cardiovascular disease. In the AppendixListing of Impairments, Regulations No. 4 Subpart P, it is stated:

"Hypertensive vascular disease produces disability when it causes complications in one or more of the four main end organs; i.e., the heart, the brain, the kidneys, and the eyes (retinas). This may occur singly or in combination and to varying degrees in the different end organs." § 4.00 C.
Exhibits AC-2 does not contain a finding of any complications in one or more of the four main end organs. The remainder of Exhibit AC-2 is a review of previous x-rays of plaintiff.
The determinative question in this case is whether plaintiff's conditions, singly or in combination, are the medical equivalent of any single listed impairment. There is some conflict in the findings of Dr. Tull after the December 14, 1970 examination and Dr. A. D. Brookreson's findings in Exhibit AC-2 regarding plaintiff's back. This conflict was resolved by the Appeals Council decision in favor of Dr. Tull's findings and accordingly denied benefits. See Brasher v. Celebrezze, supra, 340 F.2d at 414. Dr. Holcomb considered the back problem, hiatus hernia and fibromyoma uterus and concluded that plaintiff did *253 not have the medical equivalent of any single listed impairment.
There is substantial evidence on the record considered as a whole to support the Secretary's findings. Accordingly, summary judgment is granted and the decision of the Secretary is affirmed.
So ordered.